IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

GALEN VERNON GRIFFIN,
               **Movant,**

-vs-
                                             Case No.  A-14-CA-833-SS
                                             [No. A-13-CR-167(1)-SS]

UNITED STATES OF AMERICA,
               **Respondent.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Galen Vernon Griffin's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [#98], Respondent United States of America (the Government)'s Response [#102], and Movant Griffin's Reply [#103]. Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders DENYING the § 2255 motion.

### Background

On April 2, 2013, Movant Galen Vernon Griffin (Griffin) and Nadine Irene Griffin (Nadine) were charged in a two-count indictment with conspiracy to possess with intent to distribute more than 28 grams of a mixture or substance which contained a detectable amount of cocaine base, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846 (Count One), and possession with intent to distribute more than 28 grams of a mixture or substance which contained a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1) (Count Two).

On May 22, 2013, Griffin was charged in a one-count sealed superseding information with distribution of heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).   On May 24, 2013, Griffin entered a plea of guilty to count one of the superseding information pursuant to a plea agreement.   On August 16, 2013, the Court sentenced Griffin to a 120-month term of imprisonment, followed by a five-year term of supervised release, and ordered Griffin to pay a $100 mandatory assessment fee.   A direct appeal was not taken in this case.

On September 2, 2014, Griffin filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.   In his motion, Griffin alleges he was denied effective assistance of counsel because his attorney: (1) failed to object to the drug quantities that were attributed to him; and (2) failed to introduce available evidence in support of the objection to the sentencing enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

## Analysis

### I.     Legal Standard

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack.   28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).   Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal.   *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990).   If the error is not of

constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

## II.   Application

## A.   Statute of Limitations

The Government first argues Griffin's § 2255 motion is time-barred. The limitations period for § 2255 motions is one year. 28 U.S.C. § 2255(f). The period begins to run from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2255(f)(1)–(4).

A judgment of conviction becomes final under § 2255(f)(1) when either (1) direct review, if any, concludes, or (2) the time to pursue a direct review expires. *See Giesberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir. 2002); *United States v. Thomas*, 203 F.3d 350, 356 (5th Cir. 2000). Here, no direct appeal was filed, and therefore Griffin's judgment of conviction became final on August 30, 2013, fourteen days after the judgment was entered. Consequently, Griffin had until August 30, 2014, to file his § 2255 motion. Griffin filed his § 2255 motion on Tuesday, September 2, 2014,

over a year after the one-year limitations period had expired. The thirtieth, however, was a Saturday, and the following Monday, September 1, 2014, was Labor Day; thus, the one-year limitation period ended on Tuesday, September 2, 2014. *See* Fed. R. App. P. 26(a)(1)(C); *United States v. Sosa-Saucedo*, 459 F. App'x 450, 451 (5th Cir. 2012) (unpublished). Therefore, Griffin timely filed his § 2255 motion.

**B.     Ineffective Assistance of Counsel**

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

**1.     Failure to object to the drug quantities**

Griffin contends his counsel was ineffective when she failed to object to the quantity of drugs attributed to him. According to Griffin's plea agreement, the following allegations are true and correct [sic throughout]:

> Beginning in December, 2012, Task Force officers identified Galen Vernon GRIFFIN as a source of supply for heroin and crack through the use of a credible and reliable

-4-

confidential source (CS).  Officers conducted a controlled buy at the defendant's residence on Summervale Dr. in Austin, TX in December, 2012.  Officers watched as the informant entered the Summervale residence and reappeared a few minutes later.  The CI was followed away from the residence, met with officers and produced a quantity of heroin.  The CI stated that Galen Griffin had given the heroin to a woman in the trailer who in turn sold the heroin to the CI.

Based on this and other information, the officers obtained a search warrant for the Summervale residence.  On January 10, 2013 the warrant was executed.  Upon entry, officers found Galen GRIFFIN as he left BR #2; Nadine Griffin was found in BR#1 with another female; the GRIFFIN's are brother and sister.  Two other individuals, including the woman who sold the heroin to the CI, were found in other locations in the residence.  In BR# 1, officers found a small safe under the bed on which Nadine GRIFFIN was found.  Officers pried the safe open and located 42 g of crack and an ID in the name of Rosalyn James.   In addition, BR# 1 was equipped with a microwave over bearing crack residue; a Pyrex container bearing crack residue; documents in the name of Nadine GRIFFIN; a small quantity of marijuana; various crack pipes; a container of baking soda; digital scales; and other evidence of crack manufacture and distribution.

In BR# 2 officers found digital scales; several rocks of crack cocaine; 1 g of heroin; a syringe loaded with heroin; a small quantity of marijuana; a Pyrex dish bearing crack cocaine residue; and other evidence of drug distribution. Boxes of baking soda, grinders, and scales were found at various locations in the residence.

All five individuals were advised of their rights.  All indicated that they understood their rights and made statements to the officers.  Nadine GRIFFIN stated that she lived in BR#1.  She told officers that the safe belonged to Ms. James who had left the residence several months ago.  She stated that she did not know what was in the safe and that she had unsuccessfully tried to pry the safe open.  The officers noted two issues with her statement: First, they had easily pried the safe open; second, the officers found 2 keys that opened the safe on a key ring that Nadine admitted belonged to her.  The other 3 women in the residence identified BR# 1 as Nadine's and BR# 2 as Galen's.  Nadine and Galen were arrested on PWID charges; 2 of the women were arrested on outstanding warrants and the third was released at the scene.

Plea Agreement [#38] at 7–8.

According to Griffin's Presentence Report (PSR), his total offense level was 25, and his

criminal history was a category VI.  *See* PSR [#95] at 6–15.  The resulting guideline range was 110

to 137 months.  *Id.* at 22.  In calculating the offense level, probation included, as relevant conduct,

42.29[1] grams of cocaine base found in the small locked safe under the bed on which Nadine was found and 126 grams of marijuana located on the night stand in Nadine's bedroom. *Id.* at 4–5.

Griffin argues his counsel was ineffective for failing to object to the drugs found in Nadine's bedroom because if probation had not included the 42.29 grams of cocaine base and the 126 grams of marijuana, then Griffin's offense level would have been calculated at 11, not 25. According to Griffin, the guideline range would have then dropped to a range of 27 to 33 months. Griffin's math is not exactly correct, but the Court accepts his point that if the drugs found in Nadine's bedroom had not been attributed to him, his sentencing range would have been significantly less.[2]

A defendant convicted of a drug offense is sentenced based on the amount of drugs involved in the offense. *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009) (citing U.S. SENTENCING GUIDELINES MANUAL (USSG) § 2D1.1). In calculating a defendant's base offense level, the district court may consider other offenses in addition to the acts underlying the offense of conviction, as long as those offenses constitute "relevant conduct" as defined in the Guidelines. *Id.* The Fifth Circuit summarized the issue of "relevant conduct" in *Rhine*:

> As we have recognized, the base offense level can reflect quantities of drugs not specified in the count of conviction if they were part of the same course of conduct

---

[1] In his § 2255 motion, Griffin indicates the amount of cocaine base based found in Nadine's bedroom that was used in calculating his offense level was 42.61 grams. *See* Mot. Vacate [#98] at 4. The PSR, however, indicates 42.29 grams of cocaine base were found in the safe in Nadine's bedroom, and .32 grams of cocaine base were found in Griffin's bedroom. Probation did attribute the 42.29 grams of cocaine base found in Nadine's bedroom to Griffin in calculating his offense level.

[2] If the drugs found in Nadine's bedroom had not been attributed to Griffin, his base offense level would have been 12. In his PSR, Griffin received a three-level decrease for "acceptance of responsibility," but he would only have been eligible for a two-level decrease had his base offense level been 12. *See* U.S. SENTENCING GUIDELINES MANUAL (USSG) § 3E1.1. Furthermore, Griffin may not have received credit for "acceptance of responsibility" at all if he denied any connection to the drugs found in Nadine's room. Therefore, Griffin's total offense level more likely would have been 12 or 14, not 11 as he argues in his § 2255 motion. Nonetheless, his sentencing range with an offense level of 12 (30 to 37 months) or 14 (37 to 46 months) would still be significantly less than it was with an offense level of 25 (110 to 137 months) as calculated in the PSR.

-6-

or part of a common scheme or plan as the count of conviction. The defendant need not have been convicted of, or even charged with, the offenses for them to be considered relevant conduct for sentencing purposes. In drug distribution cases, we have broadly defined what constitutes the same course of conduct or common scheme or plan.

*Id.* (internal quotations and citations omitted).

Griffin fails to show his counsel was ineffective for failing to object to the quantity of drugs attributed to him. As an initial matter, Griffin's counsel did make this objection in her sentencing memorandum, arguing to the Court "[t]here are few, if any, facts that suggest Galen Griffin sold crack cocaine or marijuana. Thus, we implore the Court to subtract the 42.61 grams of cocaine base and 126 grams of marijuana found in his sister's room . . . . This subtraction would hold Galen accountable for the substances found in or near his possession at the time of the raid and subject him to a base offense level of 12." *See* Def.'s Sentencing Mem. [#56] at 6. While Griffin is correct that counsel neither included a "quantity of drugs" objection in her written objections to the PSR nor explicitly raised the issue at sentencing, the Court did make clear at sentencing it had received, reviewed, and considered counsel's sentencing memorandum—which did include the "quantity of drugs" objection—as part of the record. Sentencing Tr. [#77] at 8:23–9:6.

Furthermore, a fair reading of the plea agreement's factual basis and the PSR supports including the drugs found in Nadine's bedroom as part of Griffin's "relevant conduct." The confidential informant (CI) revealed Griffin as the source of supply for heroin and crack at the Summervale residence. The controlled buy demonstrated this house was associated with Griffin and a place to go if looking to purchase and use drugs. The CI went first to Griffin who distributed heroin to a woman in the trailer so that she could then sell the heroin to the CI. The search revealed in Griffin's room digital scales, rocks of crack cocaine, 1 gram of heroin, a syringe loaded with

heroin, a Pyrex dish bearing crack cocaine residue, and marijuana. At various other locations in the house were boxes of baking soda, grinders, and scales. In Nadine's bedroom, officers found 42 grams of crack, a microwave oven bearing crack residue, marijuana, and the same indicators of manufacture and distribution described above. In sum, the evidence demonstrates the house as a whole functioned as the hub for a drug manufacturing and distribution operation. There is no indication Griffin was denied access to any portion of the house. Instead, the evidence supports a finding Griffin and Nadine were manufacturing and distributing drugs as a brother-and-sister team.

Griffin relies on the Fifth Circuit's decision in *United States v. Ortiz*, 613 F.3d 550 (5th Cir. 2010), to argue the analysis of a "common scheme or plan" cannot be too broad because otherwise "almost any uncharged criminal activity can be painted as similar in at least one respect to the charged criminal conduct." *Id.* at 557. In *Ortiz*, the defendant used a condo he rented for his girlfriend as a stash house for his marijuana trafficking operation. *Id.* at 553–55. Police searching the condo found marijuana in plain view in the kitchen, more marijuana in closets in the garage, and some cocaine inside a suitcase in one of the bedrooms. *Id.* at 553. Defendant admitted he was aware of the marijuana but denied knowledge of the cocaine. *Id.* at 555. Cuellar, a friend of the defendant's girlfriend who was visiting for the night, claimed ownership of the suitcase. *Id.* The Fifth Circuit found the cocaine should not have been attributed to the defendant as relevant conduct because it was not part of a common scheme or plan. *Id.* at 557. The court reasoned the general goal of selling drugs for a profit is insufficient to satisfy the common purpose factor, and the fact the two drugs were in the same place at the same time is not sufficient. *Id.* The Fifth Circuit reversed the district court's holding regarding relevant conduct, finding it was supported only by speculation. *Id.*

Here, the CI tabbed Griffin as a source of both heroin and crack cocaine at the Summervale residence.  In addition to the crack found in Nadine's room, police found crack in Griffin's room along with indicators of cooking.  Unlike the third-party visitor who brought a suitcase into the defendant's home for an overnight stay in *Ortiz*, Nadine is Griffin's sister, and they lived at the residence together.  The heroin, the crack cocaine, and the marijuana were connected by more than just their proximity or the mere goal of selling drugs for a profit.  The evidence indicated Griffin and Nadine operated the premises together to sell these various drugs.  The drugs found in Nadine's bedroom were properly attributed to Griffin as relevant conduct.

Finally, Griffin offers no evidence to support his position beyond claiming there were several witnesses, including Chantal Riley, Nadine Griffin, and Carla Bonner, who were available to testify that Griffin did not have knowledge or access to the drugs in Nadine's bedroom.  *See* Mot. Vacate [#98] at 4.  Griffin's representations as to available witnesses and their supposed testimony are no more than conclusory assertions.  Griffin has not provided an affidavit from any witness stating she is willing and available to testify and providing the substance of the proffered testimony.

Griffin fails to demonstrate deficient performance by his counsel, and he fails to show prejudice.[3]  As such, the Court denies Griffin's first ground for ineffective assistance of counsel.

---

[3] The Court notes another reason why Griffin has failed to show prejudice.  Griffin's PSR indicated a departure under USSG § 4A1.3(a)(1) could be appropriate given Griffin's 21 criminal history points, which did not include "convictions which did not score due to their age, convictions in which there was no 'intervening arrest,' and offenses that were dismissed, or considered at the time of sentence of other cases." PSR [#95] at 23. In addition, the PSR pointed out Griffin had at least two pending cases with active warrants under aliases. *Id.*  The PSR finally indicated the Court may consider a variance pursuant to 18 U.S.C. § 3553(a). *Id.* at 24.  Because the Court concluded Griffin's sentencing range of 110 to 137 months adequately matched his criminal history, the Court sentenced Griffin within the guidelines to 120 months.  If, however, Griffin's range had been less—as he urges it should have been had he received effective assistance of counsel—it does not mean he would have received a sentence within that guideline range or even a lighter sentence than 120 months.  To the contrary, the Court stated on the record at sentencing that Griffin would have received 120 months even if his objection (regarding the two-level enhancement discussed below) had been sustained. *See* Sentencing Tr. [#77] at 17:1–11.

2.      **Failure to introduce available evidence in support of the objection to the sentencing enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance**

In his PSR, Griffin received a two-level enhancement under USSG § 2D1.1(b)(12) because the investigation determined he maintained the premises in question for the purpose of manufacturing or distributing a controlled substance. Griffin argues his counsel was ineffective for failing to introduce evidence supporting the objection to this sentencing enhancement. The two-level increase raised Griffin's total offense level from 23 to 25. Without this increase, Griffin argues he would have been subject to a sentencing range of 92 to 115 months.

At sentencing, the Court asked Griffin's counsel if she wished to present any evidence, and she responded:

> No, your Honor. Just the objection that we submitted in writing. Again, we just reiterate our objection that Mr. Griffin was not in a capacity to have anything to do with maintaining any type of residence. He had a few material possessions there, but did not take part in the maintenance of that property nor did he have any sort of utilities in his name there. And he simply used that residence as a crash house. His main residence was his parents where he maintained a room there.

Sentencing Tr. [#77] at 4.

As indicated, while counsel did not submit any evidence regarding the two-level enhancement, she did file a written objection to the PSR and re-urged the objection at sentencing. The Court heard argument from the Government and from Griffin's counsel on whether the two-level enhancement was appropriate. *Id.* at 4–7. Ultimately the Court overruled the objection, reasoning as follows:

> Well, it was his selling and distribution with foot travel to that residence that caused the investigation in the first place. People knew to go there and buy and use, and the objection's overruled. It's an enhancement and I think was correctly placed there by the probation department.

*Id.* at 7.

The record is clear Griffin's counsel raised the objection both in writing and at sentencing, and the Court considered and overruled the objection. The plea agreement's factual basis and the PSR support the Court's ruling. As detailed above, the CI identified Griffin as the source of supply for drugs out of the Summervale residence; the controlled buy illustrated this fact; Griffin controlled the drug transaction with the CI; and the search revealed evidence of drug manufacturing and distribution throughout the house. In sum, the evidence showed Griffin maintained a room at that residence, was known in the community as a man to see for drug purchases at that residence, and controlled the CI's heroin buy at that residence. The two-level enhancement based on a finding Griffin maintained the premises for the purpose of manufacturing or distributing a controlled substance was appropriate.

Despite the fact Griffin's counsel raised the objection and despite the fact the record supports overruling that objection, Griffin nevertheless contends his counsel was still ineffective because there was available evidence she should have presented in support of the objection. Specifically, Griffin argues his counsel should have offered the testimony of Chantal Riley, Nadine Griffin, and Carla Bonner, and their testimony would have helped establish: (1) Griffin did not have a possessory interest in the premises, and (2) Griffin did not control access to, or activities at, the premises. *See* Mot. Vacate [#98] at 12–13. This argument fails for multiple reasons. First, the Court does not find counsel's decision not to present evidence on an objection raised and argued amounts to an error so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Furthermore, Griffin fails to show prejudice. In her written and oral objections, Griffin's counsel captured the substance of the contemplated testimony, and the Court rejected the argument. Put

differently, the testimony would not have altered the Court's conclusion.  Finally, as previously

stated, Griffin's bald claims regarding witness testimony are not supported by substantiating

affidavits.  In failing to show the Court the evidence counsel allegedly should have presented, Griffin

leaves the Court unable to even assess whether the absence of the evidence resulted in prejudice.

Griffin has failed to satisfy either prong of the *Strickland* test regarding his counsel's decision

not to present evidence on the two-level enhancement Griffin received because the investigation

determined he maintained the premises for the purpose of manufacturing or distributing a controlled

substance.[4]

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under

§ 2255 "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)

(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective

December 1, 2009, the district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of

the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the

requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000).   In cases where a district court rejects a movant's

---

[4] Finally, the Court again notes an additional reason Griffin has failed to show prejudice.  Griffin's § 2255 motion presumes the Court would have sentenced him within the range he would have been subject to if he had received effective assistance of counsel.  *See* Mot. Vacate [#98] at 13 (arguing that because the Court sentenced Griffin to 120 months when the range was 110 to 137 months, the Court would have sentenced Griffin to 100 months if the range had been 92 to 115 months).  This presumption is misplaced.  As explained above, Griffin's lengthy criminal history justified an upward departure, yet because the range of 110 to 137 was commensurate with this history, the Court did not need to depart from the range.  If the range had been smaller, however, the Court would have exercised its discretion under USSG § 4A1.3(a)(1) and 18 U.S.C. § 3553(a) to vary from the guideline range.  *See supra* note 3.

constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Griffin's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability shall not be issued.

**Conclusion**

Accordingly,

IT IS ORDERED that Movant Galen Vernon Griffin's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [#98] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the 27th day of February 2015.


SAM SPARKS
UNITED STATES DISTRICT JUDGE